

_____
ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In Re: | * | |
| James Paul Quillen, Jr. | * | Case No.    06-15938-RAG |
| | * | Chapter    7 |
| | * | |
| Debtor | * | |
| * * * * * * * * | * | |
| Baltimore County Savings Bank, FSB | * | |
| | * | |
| | * | |
| Plaintiff | * | |
| vs. | * | Adversary    No. 07-0839 |
| James Paul Quillen, Jr. | * | |
| | * | |
| | * | |
| Defendant | * | |

### MEMORANDUM OF DECISION IN SUPPORT OF
### ORDER DENYING MOTION TO DISMISS

In this case, the Court must decide when the time to file a complaint for determination of dischargeability of debt under 11 U.S.C. § 523 expires in the event of the conversion of a bankruptcy case from Chapter 11 to Chapter 7. Debtor contends that because his case was converted, Federal Rule of Bankruptcy Procedure 4007(c), which fixes this deadline in the first instance, should not be interpreted according to its plain language. Instead, Debtor claims the governing time period should

begin to run from a date much earlier than that stated in the Rule.  This Court disagrees with the Debtor's proposition.  For the reasons stated below, the Court holds that the time to file a complaint for determination of dischargeability of debt under 11 U.S.C. § 523, following the conversion of a bankruptcy case from Chapter 11 to Chapter 7, expires 60 days after the first date set for the Section 341(a) meeting of creditors in the converted case.

On September 26, 2006 (Petition Date), Debtor filed his Voluntary Petition under Chapter 11 of Title 11 of the United States Code.  He listed Baltimore County Savings Bank, FSB (hereafter "BCSB") on his Schedule F, Creditors Holding Unsecured Nonpriority Claims, as being owed two debts in the amounts of $1,323,802 and $2,394,785, respectively, as of the Petition Date.  On December 12, 2006, BCSB filed two unsecured claims, Claim No. 21 in the amount of $2,483,382.09 and Claim No. 22 in the amount of $1,319,844.33.

On June 18, 2007, several creditors (not including BCSB) filed a Joint Motion to Convert Case from Chapter 11 to Chapter 7.  On July 19, 2007, after the completion of an evidentiary hearing but prior to the Court's ruling on the Joint Motion, Debtor filed a line consenting to the conversion of the case.  One week later, on July 26, 2007, an Order Granting Motion to Convert Case from Chapter 11 to Chapter 7 was entered.

On July 30, 2007, the Clerk issued a Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, and Deadlines (Notice).  Pursuant to the Notice, a meeting of creditors was scheduled for August 28, 2007.  The Notice also fixed a deadline of October 29, 2007 for the filing of complaints objecting to the discharge of the Debtor or to determine the dischargeability of certain debts.[1]

---

[1] The Notice also set several other deadlines.  The deadline to object to exemptions was fixed at 30 days after the conclusion of the meeting of creditors.  The deadline to file a proof of claim for general creditors was set for November 26, 2007 while that for governmental units was fixed as January 22, 2008.

It should also be noted that Richard M. Kremen was initially assigned this case as Chapter 7 Trustee.  On August 9, 2007, he was removed as Trustee and replaced by Zvi

-2-

On October 26, 2007, BCSB filed a Complaint for Determination of Nondischargeability of Debt (Complaint) under 11 U.S.C. § 523(a)(2)(A) and (B)[2] thereby initiating the instant Adversary Proceeding.[3] On December 3, 2007, Debtor filed an Answer that admitted jurisdiction but generally denied "all of the other allegations in the Complaint". Simultaneously, Debtor filed a Motion to Dismiss Complaint as Untimely (Motion to Dismiss) (Dkt. No. 7), asserting that although the Complaint was filed within the deadline set by the Court's Notice it was still untimely and therefore barred by Rule 4007(c).[4] On December 14, 2007, BCSB filed its Opposition to Motion to Dismiss (Opposition) (Dkt. No. 8).[5] The Parties agree that Rules 4007(c) and 1019(2) govern this dispute. However, they disagree sharply on their proper interpretation.

---

Guttman. As a result, on August 28, 2007, a Second Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, and Deadlines was issued by the Clerk (Second Notice). The Second Notice rescheduled the Section 341(a) meeting for September 19, 2007 and purported to reset to November 19, 2007 the deadline to file a complaint objecting to the discharge of the Debtor or to determine the dischargeability of certain debts. BCSB does not seek to rely upon the deadline purportedly established by the Second Notice.

[2] Hereafter, all statutory citations are to the Bankruptcy Code, found at Title 11 of the United States Code, unless otherwise noted. All references to Rules are to the Federal Rules of Bankruptcy Procedure. F. R. Bankr. P. 1001 *et seq.*

[3] In the Complaint, BCSB alleges that it loaned QD Tartae, LLC the sum of $2,480,000 on March 30, 2004 and that Debtor personally guaranteed the loan. It is also alleged that Debtor, via an entity called QC Ridgely, LLC, promised to grant BCSB a deed of trust secured by real property located at 7 W. Ridgely Rd., Lutherville, Maryland. BCSB avers that while Debtor promised it a first priority deed of trust on the property, he instead caused QC Ridgely to grant a first priority deed of trust on the same property to a different lender. BCSB asserts that it justifiably relied upon Debtor's promise in extending the loan, that the Debtor committed fraud in misrepresenting his intentions with respect to the transaction, that BCBS was injured as a result and therefore the debt cannot be discharged.

[4] Rule 4007(c) operates as a statute of limitations for the filing of exceptions to discharge actions. See *In re Miton*, 379 B.R. 569, 575 (Bankr. D. Md. 2007).

[5] A hearing on the Motion to Dismiss and Opposition was combined with the pretrial conference held on January 15, 2008. At that time, the Motion to Dismiss was orally denied with the undersigned indicating that a written opinion would follow.

Among other things, Rule 4007(c) governs the time for filing complaints to determine the dischargeability of debts under Section 523(c). The Rule provides:

> Except as provided in subdivision (d), a complaint to determine the dischargeability of a debt under § 523(c) shall be filed *no later than 60 days after the first date set for the meeting of creditors under § 341(a)*. The court shall give all creditors no less than 30 days' notice of the time so fixed in the manner provided in Rule 2002. On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision. The motion shall be filed before the time has expired. (emphasis supplied)

Rule 1019(2) governs the commencement of new time periods in the event a Chapter 11, 12 or 13 case is converted to a Chapter 7 liquidation. The Rule provides:

> (2) New filing periods. *A new time for filing, a motion under § 707(b) or (c), a claim, a complaint objecting to discharge, or a complaint to obtain a determination of dischargeability of any debt shall commence under Rules* 1017, 3002, 4004, or *4007*, provided that a new time period shall not commence if a chapter 7 case had been converted to a chapter 11, 12 or 13 case and thereafter reconverted to a chapter 7 case and the time for filing a motion under § 707(b) or (c), a claim, a complaint objecting to discharge, or a complaint to obtain a determination of the dischargeability of any debt, or any extension thereof, expired in the original chapter 7 case. (emphasis supplied)

Debtor does not dispute that upon conversion from Chapter 11 to Chapter 7 the deadline for creditors to file complaints to determine dischargeability of debts must be reset pursuant to Rule 1019(2).[6] Indeed, it would be futile to do so as Rule 1019(2) could not be more clear. When a case is converted from Chapter 11 to Chapter 7, the deadlines for filing proofs of claim, complaints under

---

[6] Rule 1019 implements Section 348 which governs the effect of conversion from one chapter to another. 9 Alan N. Resnick *et al.*, Collier on Bankruptcy § 1019.01 (15th ed. 2005). Rule 1019 provides significant detail as to how a case filed under Chapter 11 or 13 is to proceed when converted to Chapter 7. For example, a debtor need not re-file his previously submitted schedules and statements, but must file a statement of intention under Section 521(a)(2) if so required. F. R. Bankr. P. 1019(1). Creditors are granted a new time period to file claims and complaints objecting to discharge and nondischargeability of debts. F. R. Bankr. P. 1019(2). Creditors need not re-file proofs of claim submitted pre-conversion. F. R. Bankr. P. 1019(3).

-4-

Section 727, and complaints under Section 523, among others, are expressly reset. The enumerated actions are core creditor rights and Rule 1019 evidences an unmistakable intent to breathe new life into them, to the extent necessary, for a reasonable period of time following conversion.

Debtor agrees that the rights of creditors to pursue these actions must exist. Indeed, he does not have much choice in that regard. However, he disputes the timing of the reset, specifically taking issue with how Rule 4007(c) should be interpreted. Needless to say, adoption of Debtor's argument will result in the dismissal of BCSB's Complaint and bring him one step closer to permanent freedom from the underlying debt.[7] The crux of Debtor's argument is that creditors have significantly less time to file a complaint under Section 523(c) post-conversion than the express, unambiguous language of Rule 4007(c) plainly provides. Debtor contends that, in contrast to the words of Rule 4007(c), a complaint under Section 523(c) *must be filed 60 days after the entry of the order converting a case* from Chapter 11 to Chapter 7. Debtor's case was converted on July 26, 2007. Hence, he argues that the deadline to file complaints under Section 523 actually expired on September 25, 2007 – 34 days before the date set in the Court's Notice and 31 days before BCSB filed its Complaint.

Debtor's argument is structured as follows: (1) in light of the limiting language of Section 348(a), a Section 341(a) meeting of creditors occurs once, and only once, in a given case and therefore there is no meeting of creditors under Section 341(a) following conversion from Chapter 11 to Chapter 7,[8] (2) the language contained in Rule 4007(c) which states the deadline shall expire "60 days after the first date set for the meeting of creditors under Section 341(a)" is therefore

---

[7] Whether the Debtor will receive a general discharge is still an open question. At this juncture, both the Trustee and PNC Bank have filed complaints objecting to the Debtor's discharge. (Dkt. Nos. 453 and 454).

[8] This proposition stands in stark contrast to the longstanding practice in this District. At first glance, such an argument would appear to be as frivolous as arguing that the earth is flat.

-5-

meaningless in a converted case, and (3) the Court should perform something akin to a judicial lobotomy on the Rule and substitute the words 'date of conversion' for the phrase "first date set for the meeting of creditors under Section 341(a)".

Debtor's predicate contention is fatally flawed. And that structural defect results in the collapse of his entire argument. Under Section 301, the filing of a voluntary petition under a chapter of Title 11 commences a case and constitutes an order for relief under such chapter. Section 341(a) provides that, within a reasonable time "after the order for relief in a case" under Title 11, the U.S. Trustee "shall convene and preside at a meeting of creditors". Pursuant to Section 343, the debtor is required to appear and submit to examination under oath "at the meeting of creditors under Section 341(a)". And when a case is converted from the chapter under which it was originally filed to a different chapter, Section 348(a) provides that conversion constitutes "an order for relief under the chapter to which the case is converted".[9] By contrast, nowhere in the Bankruptcy Code is the Section 341(a) meeting of creditors expressly deemed to be a one time event.

The conclusion this Court must draw from the plain meaning of these connected sections is that the order of conversion constitutes a new order for relief pursuant to Section 348(a) and the new order for relief triggers a new meeting of creditors under Section 341(a). *F&M Marquette Nat'l Bank v. Richards*, 780 F.2d 24, 25 (8th Cir. 1985). This conclusion is firmly grounded in the plain language of the statutes in addition to logic and common sense. Thus, Debtor is wrong when he asserts that no statute or rule affirmatively requires a meeting of creditors post-conversion. To the

---

[9] Conversion, however, does not effect a general change in the *date* of the filing of the petition, the commencement of the case, or the *order for relief*. Multiple exceptions to this general rule are contained in Section 348(b) and (c). As will be touched upon below, in the context of the timeliness of objections to exemptions following conversion, the layer of murkiness traceable to the fact that Section 348 deems the conversion to be a "new order for relief" while also leaving the "date of" the original order for relief unaltered is one factor that has lead to sharp disagreement in the case law as to whether exemptions claimed prior to conversion may be objected to post-conversion.

-6-

contrary, the post-conversion meeting of creditors is a statutory imperative.[10]  As the court noted in *F&M Marquette Nat'l Bank*, the "new meeting of creditors" held in the converted case "is not a continuation or extension of the meeting of creditors in the previous chapter 11 proceeding", but instead is "a separate and distinct meeting".  *Id.*  This Court agrees with *F&M Marquette Nat'l Bank* and holds that when a bankruptcy case is converted from Chapter 11 to Chapter 7, a new meeting of creditors under Section 341(a) must be conducted as a statutory requirement.[11]

Debtor argues that the meeting of creditors held in a converted case is not the "statutory" meeting of creditors conducted pursuant to Section 341(a), but instead is a "permissive" meeting conducted pursuant Section 702 and only then for the principal purpose of electing a trustee.  The Court is at a complete loss to understand how, in the ordinary course, a meeting held pursuant to Section 702 for the purpose of electing a trustee is anything other than a meeting of creditors under

---

[10] Rule 2003 addresses the scheduling of and manner of business conducted at the meeting of creditors.  Rule 2003(a) states that in a Chapter 7 or Chapter 11 case the U.S. Trustee "shall call a meeting of creditors to be held no fewer than 20 and no more than 40 days after the order for relief".  While 2003(a) does not specifically refer to the circumstance of conversion, the Court finds that such omission is practically meaningless.  For the reasons explained in the above text, the requirement for a post-conversion Section 341(a) meeting of creditors is dictated by statute.  It cannot be abrogated by the Rules and the Rules need not address the issue.  *See* 28 U.S.C. § 2075.

Indeed, Rule 2003(a) did not even include a reference to Section 341 prior to the BAPCPA-related revisions to the Rules (the Interim revision to Rule 2003(a) contains a brief amendment that references Section 341(e)).  As noted above, the conversion order constitutes an order for relief under the chapter to which the case has been converted and triggers a new meeting of creditors.  Rule 2003(a) serves only to set the time for conducting the meeting of creditors, by reference to the order for relief.

[11] The Court's holding is also supported by the linkage between Sections 342 and 348(c).  Section 348(c) provides that Section 342 applies in a case converted to Chapter 7 "as if the conversion order were the order for relief".  Section 342(a) commands that notice "of an order for relief in a case" under Title 11 shall be given.  Rule 2002 provides creditors are to be given notice of the order for relief and must receive at least 20 days notice of the meeting of creditors under Section 341.  F. R. Bankr. P. 2002(a)(1) and (f).  Thus, when a case is converted, a new notice of bankruptcy case must be issued and it must contain both the date of the 'order for relief' and the converted Section 341 meeting.

Section 341.  Section 702(b) expressly provides that creditors may elect a trustee "at the meeting of creditors held under Section 341 of this title".  Likewise, creditors may elect an unsecured creditors' committee under Section 705(a) "at the meeting under Section 341(a) of this title".  While additional business may be conducted at the meeting of creditors in a case converted to Chapter 7, the Code does not deem such meeting to be anything other than one conducted pursuant to the authority of Section 341.  And while it is conceivable that creditors may legitimately meet and conduct business on terms other than those provided by Section 341(a)'s broad blanket,[12] it is plain that Section 341 is the only statute expressly connected to Section 702 with respect to creditors' meetings.  And Section 341(a) plainly contemplates more than just the election of a trustee.

Debtor cites to the unreported decision in *In re Davis*, Ch. 13 Case No. 05-27950PM, Slip Op., 2006 WL 4711342 (Bankr. D. Md 2006) as unequivocal support for his claim that there is no meeting of creditors under Section 341(a) following conversion.  The precise issue in *Davis* was the timeliness of the filing of an objection to exemption under Section 522(l) and Rule 4003(b)[13]; specifically, whether a Chapter 13 trustee could object to the debtor's previously scheduled (and unobjected to) exemption after the case was converted from Chapter 7.  In *Davis*, the debtor commenced his case under Chapter 7 on August 11, 2005 and filed an amended schedule C on September 21, 2005.  In it, he listed his real property as exempt as tenants by the entireties.  The case

---

[12] *See*, Rule 2003(f).

[13] Rule 4003(b)(1), provides:

> Except as provided in paragraph (2), a party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later.  The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension.

-8-

was converted to Chapter 13 on February 25, 2006 and the Chapter 13 trustee filed an objection to the amended schedule C on April 28, 2006, just prior to the meeting of creditors in the converted case.

Relying heavily upon the holding of *Bell v. Bell* (*In re Bell*), 225 F.3d 203 (2nd Cir. 2000), the Court concluded that the time period for a Chapter 13 trustee to object to the debtor's exemption did not revive solely by reason of the conversion of the case from chapter 7 to chapter 13. Slip Op. at 4. The Court reasoned that Section 348(a) does not change the date of the order of relief upon conversion and that the time for holding the Section 341(a) meeting of creditors pursuant to Rule 2003(a) is keyed to that date.[14] *Id.* Therefore, the 30-day window within which to file an objection to the Debtor's exemptions under Rule 4003(b) slammed shut while the case was in Chapter 7 without any objection having been filed. *Id.* And the Court concluded that the window could not be wrenched open simply because of conversion. As a result, the objection was overruled and the exemption allowed.

The Rules treat objections to exemptions in a fundamentally different manner than actions to determine the dischargeability of debts. As explained above, Rule 1019(2) expressly provides that new time periods for exceptions to discharge actions commence when a case is converted from Chapter 11, 12 or 13 to Chapter 7. Conversely, Rule 1019(2) does *not* expressly reset the time period for filing objections to exemptions under Rule 4003(b). Rules 1019(2) and Rule 4007(c) were therefore irrelevant to the *Davis* decision and there was no reason to apply their crystalline mandate to the set of facts presented. The case is therefore not dispositive of the question presented herein.

---

[14] The *Bell* decision relied upon a version of Rule 4003(b) that referred to a "meeting of creditors held pursuant to Rule 2003(a)". By contrast, when *Davis* was decided in 2006, Rule 4003(b) referred to the conclusion of the "meeting of creditors held under Section 341(a)" as the triggering event for the thirty day period objection period.

Rule 1019(2) creates a bright line distinction between this case and *Davis* – between the time for filing actions to determine exceptions to discharge on the one hand and objections to exemptions on the other, in a converted case – that is easy to identify and convincing in its application. Rule 1019(2) mandates that new filing periods begin to run for certain deadlines after conversion. And each respective deadline is keyed to the "first date set for the Section 341(a) meeting of creditors". This, coupled with the statutory sections analyzed above, leaves no doubt whatsoever that a Section 341(a) meeting of creditors must take place following conversion, notwithstanding the concluding caveat of Section 348(a) that the "date of" the order for relief does not change. The general command of Section 348(a) that the conversion "constitutes an order for relief" must, at a minimum, be viewed as the point of conception for a Section 341(a) meeting after conversion. If it does not serve that purpose, then the timing portions of Rules 3002, 4004 or 4007 make no sense at all in a converted case. Is it possible the drafters intended that a Section 341(a) meeting of creditors shall occur upon conversion only for certain purposes – to reset the deadlines addressed by Rule 1019(2), for example – but not for others? That is not a result that comports with either common sense or sound statutory interpretation.

Nevertheless, logic dictates that the conclusion of the *Bell* case be interpreted that way. *Bell* holds that as the order for relief can have only *one* date under Section 348(a) there can be only *one* deadline in a case from the meeting of creditors held pursuant to Rule 2003(a) for filing objections to exemptions. And the Court therefore reasoned that the deadline under Rule 4003(b) recognizes as timely only those objections to exemptions filed "within thirty days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a)".[15] Because this logic inevitably leads to the

---

[15] Then, as it still does now, Rule 2003(a) states that the "meeting of creditors" must be called by the U.S. Trustee no fewer than 20 and no more than 40 days after the order for relief. However, Rule 4003(b) has been amended to refer the meeting of creditors held under Section 341(a) instead of Rule 2003(a).

creation of an alien form of Section 341(a) meeting upon conversion, the undersigned cannot subscribe to the reasoning of the Second Circuit.[16]

The plain meaning interpretation of Sections 301(b), 341(a) and 348(a) leads this Court to conclude otherwise. And that conclusion dovetails neatly with the irresistible pull of the realities of a bankruptcy proceeding following conversion. The drafters must have intended that a second Section 341 meeting occur after conversion, with all the attendant investigation and potential remedial action, particularly in the aftermath of a failed reorganization and the often urgent need to salvage creditor relief from the ruins of the debtor's sunken fortunes. And there is no provision in the Code that sanctions an emasculated Section 341(a) meeting as opposed to the fully robust one called for by the statute.

Bankruptcy practice regularly teaches us that overwhelming reasons exist for holding a new Section 341 meeting of creditors post-conversion. Likewise, there is significant justification for resetting the deadline to file complaints under Section 523, among other crucial milestones. Cases are commonly converted from one chapter to another, particularly so with respect to failed reorganizations or restructurings. When this occurs, the process of administration essentially resets. A new party will likely be charged to represent the estate. *See* 11 U.S.C. § 348(e). In this case, for example, Debtor is no longer a debtor in possession under Section 1107 attempting to reorganize his

---

[16] It must be emphasized here that the undersigned agrees with *Bell's* ultimate determination, as adopted in *Davis*, that under that set of facts, the right to object to the Debtor's previously unobjected to exemptions had expired. This is so for two reasons. It is difficult to counter the reasonable conclusion that the deadlines not expressly reset by Rule 1019(2) must be deemed expired without an express savings clause or some other compelling reason. Moreover, in the absence of a statutory exception, property that has been exempted is no longer property of the estate and belongs to the debtor. *Bell*, 225 F.3d at 214 – 15. The undersigned simply disagrees with the statutory interpretation that precedes that result and the necessary conclusion that no Section 341(a) meeting takes place following conversion. At a minimum, the disagreement as to how the maze of statutes and rules should be interpreted does make the issue "ripe for a clarifying amendment or decision by the Supreme Court" as stated in *Bell's* dissent. *Id.* at 222.

affairs under the protections of Chapter 11.  Instead, a Chapter 7 Trustee has been appointed to sift through the wreckage and sort through his options.  His duties include, *inter alia*, to liquidate property of the estate with the goal of providing a distribution to unsecured creditors like Plaintiff.  *See* 11 U.S.C. § 704(a).

After the conversion of a case, creditors may view the bankruptcy through a fundamentally different prism.  Unsecured creditors would have expected to receive some distribution through a Chapter 11 plan of reorganization and therefore may have thought it more advantageous to negotiate and work with the debtor to attempt to navigate the plan proposal and confirmation process.  In other words, creditors may have possessed valid reasons for holding their fire for a time.  *F&M Marquette Nat'l Bank*, 780 F.2d at 26.

However, in a Chapter 7 liquidation, the very real possibility exists that unsecured creditors will receive nothing.  And this can effect the relevant calculus.  Rule 1019 recognizes this reality and gives effect to this change in posture.  It preserves creditors' rights post-conversion by providing a new time period to file adversary proceedings to attempt to deny a debtor his discharge under Section 727 or to determine that a particular debt is nondischargeable under Section 523.  For this revival of rights to have meaning, creditors must be given the opportunity to re-examine the debtor at a second Section 341(a) meeting of creditors.  This opportunity serves an integral function in helping creditors to amass information, along with their own independent investigation of the debtor's affairs, and decide upon the proper course of action.[17]

Having held that there is a meeting of creditors under Section 341 in a case converted from Chapter 11 to Chapter 7, the Court concludes that Debtor's second and third contentions necessarily

---

[17] Additionally, when a case is converted to Chapter 7, all debts that arose before the date of conversion, but after the filing of the original Chapter 11 petition (i.e. post-petition debts), will be discharged if not excepted.  *See* 11 U.S.C. § 348(b), 348(d), and 727(b).  Thus, there may be additional creditors that seek to file complaints under Section 523.

fail. The plain language of Rule 4007(c), which says that "a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)", must be ascribed its clear and unambiguous meaning. The time for filing dischargeability complaints in converted cases is not pegged to the date of the original order for relief, but to the first date set for the new Section 341(a) meeting of creditors. *F&M Marquette Nat'l Bank*, 780 F.2d at 26.

In summary, when a case is converted from Chapter 11 to Chapter 7, a new meeting of creditors is convened by the U.S. Trustee pursuant to Sections 341(a) and 348(a). Likewise upon conversion, under Rule 1019(2), the deadline to file a complaint to determine the dischargeability of a debt under Rule 4007(c) is restarted. Rule 4007(c) provides that the complaint must be filed within 60 days after the first date set for the meeting of creditors under Section 341(a) or it will be time barred. Applying these principles to this case, the Court holds that the deadline for BCSB to file a complaint to

determine nondischargeability was October 29, 2007 and that BCSB's complaint filed on October 26, 2007 was timely. Therefore, Debtor's Motion to Dismiss will be denied. A separate order will issue.

cc:    James Paul Quillen, Jr.
       909 10th Street South, Unit 201
       Naples, Florida 34102

       Patricia A. Borenstein, Esquire
       Richard L. Costella , Esquire
       Miles & Stockbridge P.C.
       10 Light Street
       Baltimore, MD 21202

       Zvi Guttman, Trustee
       c/o The Law Offices of Zvi Guttman, P.A.
       P. O. Box 32308
       Baltimore, MD 21282-2308

       Office of the U.S. Trustee
       Garmatz Federal Courthouse
       101 West Lombard Street
       Suite 2625
       Baltimore, MD 21201

**End of Order**